UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE RESIDENCES OF HORNELL LLC, THE RESIDENCES OF HORNELL II LLC, BASSET REALTY, INC., and BASSET HOMES, INC.,

Plaintiffs,

v.

THE CITY OF HORNELL and CITY OF HORNELL INDUSTRIAL DEVELOPMENT AGENCY,

Defendants.

---

**DECISION AND ORDER**

25-CV-6576-MAV

## INTRODUCTION

This action arises from disputes over a three-phase development of a multifamily housing project in the City of Hornell. ECF No. 1 at ¶¶ 1, 23. Before the Court are Plaintiffs' September 2, 2026 motions for a temporary restraining order ("TRO"), a preliminary injunction, and an expedited hearing (collectively, the "TRO Motion"). ECF No. 23. The TRO Motion seeks to enjoin one of two named Defendants, the City of Hornell Industrial Development Agency ("CHIDA" or the "Agency"), "from taking any steps to enforce an alleged default by" the Plaintiff Residences of Hornell II LLC (the "Company" or "Residences II"). *Id.* at 1. The Court construed Plaintiffs' request for a TRO as one "on notice" and set a briefing schedule providing Defendants with an opportunity to be heard. ECF No. 24; *see* Loc. R. Civ. P. 65(b). On September 10, each Defendant filed a response, ECF Nos. 25–26, and on September 14, Plaintiffs

filed a reply, ECF No. 27. Because the Court finds that Plaintiffs have not established a likelihood of success on the merits or irreparable harm, the TRO Motion is DENIED without prejudice.

**BACKGROUND**

A plaintiff seeking injunctive relief has a "heavier burden" than a plaintiff "bears in pleading the plausible claim necessary to avoid dismissal." *New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020). Nevertheless, "[t]he Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on 'procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Mullins v. City of New York*, 626 F.3d 47, 51–52 (2d Cir. 2010) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Accordingly, the following background is drawn from the complaint, the motion papers, and supporting exhibits submitted by the parties.

Plaintiffs the Company, Residences of Hornell LLC, Basset Realty, Inc., and Basset Homes, Inc., filed a complaint against Defendants the City of Hornell (the "City") and CHIDA on October 15, 2025. ECF No. 1. Defendants are two separate legal entities, but it is apparent from the parties' filings that there is at least some overlap between the City and CHIDA. *See, e.g.*, *id*. at ¶¶ 11-17; ECF No. 25-5 at 4.[1] The extent of Plaintiffs' allegations of if and how the two Defendants have acted as one or in coordination with each other to harm Plaintiffs is unclear, but it is clear that Plaintiffs acknowledge some level of separateness between the Defendants. Most

[1] Citations to page numbers refer to the pagination generated by the CM/ECF system at the top of filed pages.

poignantly, Plaintiffs pending TRO Motion seeks to enjoin only CHIDA, *see, e.g.*, ECF No. 23 at 1 (notice of motion); ECF No. 23-20 at 2 (proposed order), and their complaint raises two claims against the City and CHIDA jointly, and two additional claims are pleaded against only the City. ECF No. 1 at 13–20.

Through various agreements,[2] Plaintiffs were meant to develop a three-phase project on Airport Road in the City of Hornell. *See id.* at 4–8. The parties listed on a key deed and lease and financing agreements are Plaintiff Residences II and CHIDA, not the City itself. *See* ECF Nos. 23-2–23-12. As the complaint alleges, CHIDA leased parcels of land covered by the project to Residences II, particularly at issue in the pleadings, the "Phase III Land," until a certain deadline passed—the deed containing a "reverter clause" which requires that Residences II "[c]ommence the construction of residential housing units, consisting of rental patio villas, townhomes and/or additional apartment units" on the Phase III Land within five (5) years of the date of conveyance, which was December 27, 2019. ECF No. 1 at ¶¶ 50, 105; ECF No. 10 at ¶¶ 14–21. Per the deed, if Residences II failed to satisfy that condition, ownership of the Phase III Land reverts to CHIDA, and Residences II purportedly loses its interest therein. ECF No. 1 at ¶ 50; ECF No. 10 at ¶ 21. As Plaintiffs contend, however, if they commenced any construction on the Phase III Land within the five-year period, the reverter clause is terminated and fee ownership transfers to Residences II. ECF No. 1 at ¶ 109.

[2] The Court discusses these agreements and their terms only as necessary to resolve the instant TRO Motion.

On January 9, 2025, CHIDA purported to recover the Phase III Land from Residences II by invoking the reverter clause and executing an Affidavit Attesting to Failed Condition Subsequent, recording it in the Steuben County Clerk's Office. *Id.* at ¶ 84. The parties dispute whether Plaintiffs' preparatory development of Phase III Land, such as initial grading and paving, and costing approximately $200,000, constitutes "[c]ommence[ment] of construction of residential housing units . . . ." *See, e.g.,* ECF No. 1 at ¶¶ 107–08; ECF No. 10 at ¶ 23–29. As will be further discussed below, Plaintiffs' pleaded claims arise from the alleged unjustified loss of the Phase III Land, *i.e.*, that Plaintiffs did not trigger the reverter clause and, even if they did, that Defendants' own actions, independently or jointly (it is unclear the extent of Plaintiffs' allegations), caused the construction delay. *See* ECF No. 1 at 13–20. Both Defendants filed answers to the complaint, in December 2025 and January 2026. ECF Nos. 10, 12. CHIDA raised a counterclaim against Plaintiffs, seeking declaratory judgment that the reverter clause was triggered, divesting Plaintiffs' interest in the Phase III Land. ECF No. 10 at 3–6. The case was referred to Magistrate Judge Colleen D. Holland. ECF No. 13. The parties started the discovery and mediation processes, and the last docket entry prior to the instant September 2 TRO Motion is dated March 20, 2026. ECF Nos. 16–22.

The TRO Motion does not seek an injunction to maintain the status quo as to the Phase III Land that is the subject of the complaint; in fact, the parties acknowledge that there is a "Notice of Pendency" that freezes any transfer or development of the Phase III Land while the underlying litigation is ongoing. *See,*

*e.g.,* ECF No. 23-21 at 13 ("[E]ven if the injunction is denied, the Phase III Land will remain subject to the Notice of Pendency and thus [is] unable to be sold or developed while the issues in this action . . . are litigated."); ECF No. 26-1 at ¶ 27 ("Plaintiffs contend—and CHIDA does not disagree—that if CHIDA is permitted to unravel benefits provided to Residences II pursuant to the Notice of Default [*infra* characterized as the "Precipitating Notice")], that will not free up the purported Phase III land during the pendency of this lawsuit."). The TRO Motion was instead precipitated by Plaintiffs' receipt on August 10, 2026, of a notice of "Events of Default" from CHIDA, informing Plaintiffs that CHIDA believes it is within its rights to "recapture up to 100% of the Financial Assistance provided to the Company" and seek additional contractual remedies should Plaintiffs not "cure" the alleged defaults within thirty (30) days (the "Precipitating Notice"). ECF No. 23-15 at 1–4. It is this "recaptur[ing]" by CHIDA of previously extended financial benefits and potential damages stemming from a failure-to-cure, that Plaintiffs seek to avoid with their TRO Motion. *See, e.g.*, ECF No. 23-21 at 5, 7–10.

**LEGAL STANDARD**

"'[A] temporary restraining order . . . serves a purpose different from that of a preliminary injunction,' in that '[t]he purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.'" *Martin v. Warren*, 482 F. Supp. 3d 51, 67 (W.D.N.Y. 2020) (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009)). Nevertheless, the criteria for granting a temporary

restraining order pursuant to Fed. R. Civ. P. 65(b) ("Rule 65(b)") or a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) ("Rule 65(a)") are the same. *Kramer v. Pawlak*, No. 12-CV-813A(F), 2012 WL 4473256, at *3 (W.D.N.Y. Sept. 26, 2012), *report and recommendation adopted*, No. 12-CV-813A, 2012 WL 5943341 (W.D.N.Y. Nov. 27, 2012). Specifically, a party seeking a TRO or preliminary injunction must demonstrate: (1) a likelihood of irreparable injury in the absence of an injunction; (2) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation; (3) that the balance of hardships tips in the movant's favor or, if relying on the presence of sufficiently serious questions, that the balance of hardships tips decidedly in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015).

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are never awarded as of right, or as a routine matter." *Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 483–84 (W.D.N.Y. 2018) (quotation omitted). Thus, the Supreme Court has stated they "'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## DISCUSSION

### I. Likelihood of Success on the Merits

The likelihood of success standard in the Second Circuit requires the party seeking injunctive relief to show "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). If the Court "cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims," it may still grant a temporary restraining order when the other elements are met, there are "serious questions going to the merits" of the case, and "the costs outweigh the benefits of not granting the injunction." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 82–83 (2d Cir. 2024). Further, courts have found that plaintiffs need not satisfy the standard for all of their claims for relief, but only on at least one of their claims. *Hercules Pharms., Inc. v. Cherne*, No. 24-CV-5659 (JS)(AYS), 2024 WL 4406899, at *3 (E.D.N.Y. Sept. 18, 2024), *aff'd*, No. 24-2545-CV, 2025 WL 1099431 (2d Cir. Apr. 14, 2025) (citing *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 109 (S.D.N.Y. 2022)).

Plaintiffs' complaint pleads four (4) causes of action, but only two (2) of them were brought against CHIDA, which is the party Plaintiffs seek to enjoin in the instant TRO Motion.

### *A. Claims Pleaded Against Both the City and CHIDA*

Against both the City and CHIDA, Plaintiffs allege a claim for deprivation of property rights in violation of 42 U.S.C. § 1983 due to Defendants' "bad faith conduct" that "effectively prevented Plaintiffs from acquiring the necessary permits and approvals, and continuing construction of Phase III of the Project," "improperly sought to trigger the reverter clause" pertaining to the Phase III Land, "attempt[ed] to prevent Plaintiffs from obtaining final approval and completing construction of Phase III of the Project," and "attempt[ed] to divest [Residences] II of its ownership of the Phase III lands." ECF No. 1 at 13–17. Also against both the City and CHIDA, Plaintiffs allege a claim for declaratory judgment to declare that Residences II is "the fee owner of the Premises," that "the reverter clause in the Deed was never triggered," that "the reverter clause in the Deed to the Premises is terminated due to the fulfillment of the condition therein," and "cancelling and discharging the Affidavit Attesting to Failed Condition Subsequent in the December 27, 2019 Deed and Automatic Reversion of Title Back to City of Hornell Industrial Development Agency dated January 9, 2025 and recording January 14, 2025 in the Steuben County Clerk's Office in Liber 3137 of Deeds at page 145." *Id.* at 17–18.

The only underlying causes of action raised against CHIDA pertain to Defendants' conduct in handling the Phase III Land, specifically allegations of their unsustainable interpretation of the reverter clause applicable to the Phase III Land and bad faith conduct designed to trigger the same.

Although not readily apparent from Plaintiffs' arguments in their TRO Motion, the defaults alleged in CHIDA's Precipitating Notice pertain to Plaintiffs' work on Phase II of the underlying development project, not Phase III. *See* ECF No. 23-15 at 3 (citing not the deed but provisions of the "Leaseback Agreement," the "Project Agreement," and the "PILOT [Payment-in-Lieu-of-Tax] Agreement"); ECF No. 26-1 at ¶¶ 26–32. *Cf.* ECF No. 23 at 9. There are no underlying causes of action in the complaint challenging CHIDA's conduct in handling Plaintiffs' performance and entitlements under Phase II of the project. This is not surprising or unreasonable given that CHIDA's Precipitating Notice of alleged Phase II defaults was served on Plaintiffs in August 2026, months after the complaint was filed. Should Plaintiffs wish to seek leave to file an amended complaint, the Court would consider that motion as a matter of course. However, as it stands, there is no underlying cause of action that the likelihood of success thereon could establish a basis for preliminary injunctive relief to enjoin CHIDA from recapturing previously extended financial benefits due to Plaintiffs' alleged defaults in the development of Phase II of the project.

The Court acknowledges that there could be common questions of fact involved in deciding whether Plaintiffs would be likely to succeed on their existing claims against CHIDA (and the City) pertaining to Phase III performance and whether Plaintiffs could be likely to succeed on potential future claims against CHIDA (and/or the City) pertaining to Phase II performance—for example, which party was responsible for a pump station located on Phase III Land, a dispute that Plaintiffs

allege delayed development of both Phases II and III. *See, e.g.*, ECF No. 23-21 at 11–12; ECF No. 27 at 6–9. That said, even assuming the Court found in Plaintiffs' favor on such factual questions, Plaintiffs have not established that the legal implications flowing therefrom are necessarily the same as applied to their relief requested in the complaint to avoid triggering the reverter clause on the Phase III Land and to their relief requested in the TRO Motion to avoid cancellation and recapturing of financial assistance associated with Phase II development. Although Phase II and Phase III development may be "interrelated" as Plaintiffs allege, *e.g.*, ECF No. 23 at ¶ 14, there are several potential issues that could cause the Court's evaluation of Plaintiffs' alleged entitlements regarding Phases II and III to diverge, including but not limited to whether Plaintiffs breached, defaulted on, or otherwise failed to satisfy the terms of each phase; the timing of certain communications and their impact on whether and when a development obligation may have been excused, waived, or modified and/or whether Defendants acted in bad faith; and whether Plaintiffs have a constitutionally protected property interest in alleged deprivations.

In sum, whether Plaintiffs are likely to be successful on either of their two existing Phase III Land claims against CHIDA—which the Court makes no comment on—cannot reasonably provide the basis for the relief requested in the TRO Motion against CHIDA pertaining to alleged Phase II defaults.

### *B. Claims Pleaded Against Only the City*

Nor can the claims pleaded against only the City. As noted, the City filed a response to Plaintiffs' TRO Motion, doing so to emphasize that "Plaintiffs seek relief

from . . . CHIDA only," and that "[t]here is no basis for any form of" preliminary injunctive relief against the City, while also responding to Plaintiffs' "various arguments as to the City of Hornell that warrant a response to protect the interests of the City." ECF No. 25 at 4. The Court finds that Plaintiffs' remaining claims regarding the City's conduct do not support granting an injunction against CHIDA.

Plaintiffs' complaint alleges that the City tortiously interfered with their contract with CHIDA "with respect to the Deed, ownership of the Phase III Lands, and construction of the Project." ECF No. 1 at 18–19. Aside from the issue that this claim pertains exclusively to the Phase III Land, *see, e.g., id.* at ¶ 118 (City "improperly induced [C]HIDA to attempt to reacquire the Premises under the reverter referenced in the Deed, thereby procuring a breach of the Deed."), ¶ 119 (City "usurp[ed]" Plaintiffs' "plan to develop Phase III of the Project and take possession of the Phase III Lands that rightfully belonged to [Residences] II."), Plaintiffs do not cite legal authority to support or otherwise demonstrate how a likelihood of success on a claim against the City could justify obtaining an injunction against CHIDA. The same is true for Plaintiffs' fourth and last cause of action—promissory estoppel against the City as to the Phase III Land reverter clause. *Id.* at 19–20. This claim alleges that "[t]he City made a clear and unambiguous promise to work with Defendants to complete the Project and accept dedication of a municipal pump station to service Phases I, II, and III of the Project," and that the City should be estopped from "tak[ing] the position that the reverter clause was triggered, when it was already terminated." *Id.* at ¶¶ 125, 128. Although this claim implicates a common factual

issue regarding ownership of the pump station, as the Court discussed, the implications of from what and when the City is purportedly legally estopped would be different as between Phase II and III entitlements and performance, and Plaintiffs have not demonstrated why an injunction against another Defendant would be warranted.

For the above reasons, Plaintiffs have not demonstrated a likelihood of success on the merits to support granting their TRO Motion.

## II. Irreparable Harm

Should Plaintiffs seek leave to amend their complaint and renew their TRO Motion, the Court notes that, as currently argued, it finds Plaintiffs have failed to establish irreparable harm in the absence of an injunction preventing CHIDA from cancelling and recapturing previously extended financial benefits as a result of alleged defaults in Phase II development obligations.

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). "To establish irreparable harm, the moving party must show 'an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of money damages.'" *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quotation omitted). Irreparable harm is "harm to the plaintiff's legal interests that could not be remedied after a final adjudication." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012). "[L]oss of reputation, good will, and business opportunities" may constitute

irreparable harm. *IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224, 240 (E.D.N.Y. 2024) (citing *Rex Med. L.P. v. Angiotech Pharm. (US) Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010)). However, "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of New York*, 409 F. 3d 506, 510 (2d Cir. 2005). Conclusory statements as to why money damages are inadequate to remedy the alleged harm are insufficient to support preliminary injunctive relief. *See, e.g.*, *Stringer v. Simon & Schuster, Inc.*, No. 1:25-CV-0670 MKV, 2025 WL 2549159, at *3–4 (S.D.N.Y. Sept. 4, 2025).

Here, Plaintiffs' allegations of reputational harm are conclusory and unsupported by legal authority. Plaintiffs argue that CHIDA's mere service of the Precipitating Notice on "Plaintiffs' longtime lending partner threatens serious and imminent harm to Plaintiffs' reputation and goodwill with that lender." ECF No. 23-21 at 8. Plaintiffs do not describe further why its relationship with a "longtime lending partner" would be so seriously impaired based on service of the notice itself especially where Plaintiffs steadfastly maintain the notice's impropriety, which the Court would reasonably presume Plaintiffs also conveyed to their lender. Additionally, without describing how the "development industry" at large is (1) aware of CHIDA's allegations of default; or (2) how this knowledge alone would threaten what Plaintiffs describe as their "sterling reputation in the development industry," Plaintiffs do not explain, for example, any heightened risk associated with closing pending or future deals while the underlying litigation is pending. *Id.* The Court

likewise finds that Plaintiffs' allegations that their ability to operate at their current capacity or at all absent an injunction are too conclusory and speculative to demonstrate irreparable harm. *See id.* at 9–10; *see, e.g., Auto Sunroof of Larchmont, Inc. v. Am. Sunroof Corp.*, 639 F. Supp. 1462, 1464 (S.D.N.Y. 1986)

Plaintiffs' additional argument that irreparable harm is established because forecasting the value of benefits that CHIDA may seek to recapture and/or stop extending is "next to impossible to quantify" at this stage fails as well. *See* ECF No. 23-21 at 9. Even assuming that were true, should Plaintiffs ultimately prevail in the underlying litigation and in the meantime were making additional and larger payments in connection with the Precipitating Notice, those payments would be for amounts certain when tendered, and it would become readily ascertainable what funds Plaintiffs could be entitled to collect at the conclusion of the litigation. *Cf.* ECF No. 1 at ¶ 101 (Plaintiffs' complaint quantifying a recent tax bill that it alleges was improperly issued, stating "despite [C]HIDA's improper attempt to divest [Residences] II of its ownership of the Phase III lands, Plaintiffs have been billed by the City and forced to make real property tax payments under protest for the Phase III lands in the amount of $8,125.45.").

Furthermore, Plaintiffs state, without support to legal authority that, should CHIDA be permitted to halt future financial assistance and "recapture" assistance previously extended, the PILOT Agreement would be "extinguished." ECF No. 23-21 at 9. Plaintiffs do not expand on this assertion, but to the extent Plaintiffs intended to argue that an injunction is necessary because should CHIDA be permitted to

proceed with terminating benefits under a certain agreement(s), the agreement itself becomes void and is unrevivable at the conclusion of the litigation, they have pointed to no legal authority supporting such a position. *Cf. Scherer v. Equitable Life Assur. Soc. of the U.S.*, No. 01 CIV. 10193 (CSH), 2001 WL 1568327, at *2–4 (S.D.N.Y. Dec. 5, 2001) (denying injunctive relief for lack of irreparable harm, noting that "Plaintiff has not offered any authority to show that if an insurance contract lapses for a reason that is the subject of adjudication between the parties, it cannot be reinstated if it turns out to have been wrongly terminated. Even if Equitable cancels the Policy because plaintiff has not paid the premiums, the Court is aware of no authority that would prevent it from requiring defendant to reinstate the Policy and pay benefits under it if plaintiff is ultimately successful on the merits," and distinguishing the implications of the insurance contract at issue with what is known as "*Yellowstone* injunctions," applicable only in the commercial real estate, landlord-tenant context to maintain the status quo by staying the cure period to avoid forfeiture of a leasehold that cannot subsequently be reinstated after the underlying litigation concludes).[3]

Therefore, the Court also finds that Plaintiffs have failed to demonstrate irreparable harm to support their TRO Motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' TRO Motion (motion for a TRO, a preliminary injunction, and an expedited hearing), ECF No. 23, is DENIED without

---

[3] The Court reiterates that the parties acknowledged a "Notice of Pendency" is already in place with respect to the Phase III Land, staying any transfer of property interests and development thereon while the underlying litigation in this matter is ongoing.

prejudice for failure to establish a likelihood of success on the merits and irreparable harm. As noted, should Plaintiffs seek leave to amend their complaint, the Court would consider that motion as a matter of course, first giving Defendants an opportunity to be heard.

SO ORDERED.

Dated: September 16, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge